IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>      vs.<br><br>MICHAEL N. CASTRO and<br>CLARE T. CASTRO,<br><br>        Defendants. | CRIMINAL CASE NO. 12-00018<br><br>**OPINION AND ORDER RE:**<br>**MOTION TO DISMISS** |

This cause came before the court upon Defendant Michael N. Castro's Motion to Dismiss filed on October 1, 2012.[1] *See* ECF No. 24. Defendant Clare T. Castro filed a Notice of Joinder on November 30, 2012.[2] *See* ECF No. 32. A hearing on the motion was held on January 31, 2013. After considering the motion, opposition, and argument of counsel, the court hereby **DENIES** the Defendants' Motion to Dismiss for the following reasons.

I.    **BACKGROUND**:

On March 14, 2012, Defendant Michael N. Castro ("Michael Castro") was indicted on the

---

[1] Exhibit A, which was referred to in the motion, was subsequently filed on November 14, 2012. *See* ECF No. 30.

[2] Aside from the Notice of Joinder, Defendant Clare Castro did not file an additional brief in support of the motion to dismiss. Thus, the arguments discussed herein are focused on the arguments presented by Defendant Michael Castro. Additionally, the court notes that the arguments made by Defendant Michael Castro are inapplicable to Defendant Clare Castro because she is not a member of the U.S. Armed Forces and is therefore not subject to the UCMJ. Accordingly, Defendant Clare Castro's Joinder of Motion to Dismiss is hereby **DENIED**.

1

following charges: Theft of Government Property (Count I) in violation of 18 U.S.C. §§641 and 2; and False Statement to a Federal Agency (Counts III, IV, V, and VII) in violation of 18 U.S.C. §§ 1001 and 2. *See* ECF No. 1. The Indictment alleges that Defendant Michael Castro wrongfully obtained Overseas Housing Allowance ("OHA") payments. *Id.*

Defendant Clare T. Castro ("Clare Castro") was indicted on the following charges: Theft of Government Property (Count II) in violation of 18 U.S.C. §§ 641 and 2; and False Statement to a Federal Agency (Count IV) in violation of 18 U.S.C. §§ 1001 and 2. *See* ECF No. 1.

Defendant Michael Castro moves to dismiss the indictment on the grounds that the district court lacks jurisdiction to try him under civilian law (1) because he never ceased to be subject to the Uniform Code of Military Justice ("UCMJ"), and (2) because he was informed by the military through its OHA forms that he is subject to military adjudication and discipline. *See* Mot., ECF No. 24.

**II.     DISCUSSION:**

   **a.  The Federal District Court has Jurisdiction over the Defendants.**

Defendant Michael Castro contends that this court does not have jurisdiction because he never ceased to be subject to the UCMJ. *See* Mot., ECF No. 24, at 1-3. To support his contention, Defendant Michael Castro cites to 10 U.S.C. § 802(c)(1)-(4), wherein it provides that "a person serving with an armed force who . . . (3) received military pay or allowances; and (4) performed military duties" is subject to the UCMJ. However, the statute itself does not provide for exclusive military jurisdiction nor does it provide that a federal district court lacks jurisdiction over a member of the U.S. Armed Forces who violates the laws of the United States.

Defendant Michael Castro also cites to numerous cases pertaining to military jurisdiction. However, none of these cases support Defendant Michael Castro's contention that this federal district court does not have jurisdiction over Defendant Michael Castro wherein he is charged

2

with violations of Title 18 of the United States Code.

18 U.S.C. § 3231 provides in pertinent part the following: "[t]he district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."

Pursuant to this statute, courts have held that "federal courts have at the very least concurrent jurisdiction with military courts over violations of the laws of the United States by military personnel whether on or off the military reservation." *United States v. Walker*, 552 F.2d 566, 567 (4th Cir. 1977). *See also United States v. Fulkerson*, 631 F.Supp. 319, 324 (D. Hawaii 1986) (recognizing that the federal court has jurisdiction if federal offense has been committed); *United States v. Debevoise*, 799 F.2d 1401, 1403 (9th Cir. 1986) (noting the principle that federal and military courts have concurrent jurisdiction over offenses committed by military personnel). As explained further by the court in *Walker*, "[c]onsequently simply because a member of the armed forces may be punished by a military court martial for an offense provides no justification for concluding that a District Court lacks jurisdiction to punish him for the same offense, if such offense is violative of a federal law." 552 F.2d at 567.

The military courts themselves are in agreement with the federal courts. In *United States v. Rubenstein*, the U.S. Air Force Board of Review found that "if a particular act is made an offense under the [UCMJ] and is also made an offense under the federal criminal code, a federal court could try it when charged as a violation of the federal criminal code." 19 C.M.R. 709, 788 (AFCMR 1955) (citing *United States v. Canella*, 63 F.Supp. 377 (S.D. Cal. 1945).

In *United States v. Duncan*, 34 M.J. 1232, 1240 (ACMR 1992), the U.S. Army Court of Military Review found that the federal district courts have original jurisdiction over "offenses against the laws of the United States" and that court-martial jurisdiction is limited to those offenses prescribed by the UCMJ. While crimes committed by a military personnel are often

3

likely prosecuted either in the federal district courts or at court-martial because the substantive provisions of the UCMJ closely parallels federal law, both the military and the federal district courts operate independently of each other. *Id.*

Additionally, Rule 201(d)(2) of the Manual for Courts-Martial (2012 ed.), states that "[a]n act or omission which violates both the code and local criminal law, foreign or domestic, may be tried by a court-martial, or by a proper civilian tribunal . . ."

In this instant case, Defendant Michael Castro is charged with violating 18 U.S.C. §§ 2, 641, and 1001; all of which are "offenses against the laws of the United States." Accordingly, this court has jurisdiction over Defendant Michael Castro.

### b. The Defendant's Due Process Rights were Not Violated.

Defendant Michael Castro argues that under the Due Process Clause of the Fifth Amendment, his rights were violated when he relied on the information and representations provided to him by the military and that he had no reason to believe he would be subject to the jurisdiction of a federal district court.[3] *See* Mot., ECF No. 24, at 3-4. Specifically, Defendant Michael Castro relies on the OHA Declaration Form, wherein it states that "the Installation Commander adjudicates cases involving questionable OHA claims" and that "disciplinary action will be taken when housing allowances are used for other that [*sic*] the purpose intended." *See* Def.'s Ex. A., ECF No. 30.

Defendant Michael Castro states that "[a]s a general matter of fundamental fairness,

---

[3] The court notes that although Defendant Michael Castro referred to a "Declaration of Michael Castro" in his motion to dismiss (*see* ECF No. 24, at 3:4), there was no declaration that was attached to the motion. The declaration purports to contain a statement from Defendant Michael Castro that he never received the required counseling for the OHA program. *See* ECF No. 24, at 3:3-4. Even if this were the case, that Defendant Michael Castro did not received the required counseling for the OHA program and that the form was partially completed by other military personnel (*see* ECF No. 24, at 3:1-3), these facts are irrelevant to the court's analysis of due process (finding that the OHA forms do not amount to plea agreements or "cooperation" agreements) and estoppel (finding that there is no pervasive pattern of false promises or evidence of ongoing active misrepresentation).

4

promises or assurances made by the military to induce or confirm an act should be honored." *See* Mot., ECF No. 24, at 4. The cases that Defendant Michael Castro cited to were in the context of plea agreements or "cooperation agreement."[4] In these cases, the defendant cooperated or performed an act that benefited the Government and in return, the Government promised something beneficial to the defendant, such as a lighter sentence recommendation. *See Johnson v. Lumpkin*, 769 F.2d 630 (9th Cir. 1985); *Santobello v. New York*, 404 U.S. 257 (1971); *Thomas v. I.N.S.*, 35 F.3d 1332 (9th Cir. 1994). The courts in these cases found that fundamental fairness requires that promises made during plea-bargaining and analogous context be respected. *See Johnson*, 769 F.2d at 633.

Defendant Michael Castro's attempt to argue that the Government is bound by the promises and assurances contained in the military forms has no merit because the OHA forms (Defendant's Exhibit A) are in no way shape or form a plea agreement or "cooperation agreement."

Next, Defendant Michael Castro contends that the Government should be estopped from prosecuting him in the federal district court because he is subject to the UCMJ[5] and relied on that jurisdiction through the representations of the military. *See* Mot., ECF No. 24 at 4.

A party seeking to raise estoppel against the Government must first establish affirmative misconduct going beyond mere negligence. *Morgan v. Gonzales,* 495 F.3d 1084, 1092 (9th Cir. 2007) (citation omitted). But even if the party seeking estoppel is able to establish affirmative misconduct, estoppel will only apply (1) where the Government's wrongful act will cause a serious injustice and (2) the public's interest will not suffer undue damage by imposition of the liability. *Id.* Estoppel against the Government is unavailable where petitioner has not lost any

---

[4] The court found "cooperation agreements" to be analogous to a plea agreement. *See Thomas*, 35 F.3d 1332 (9th Cir. 1994)

[5] As discussed *supra*, this court has jurisdiction over the defendant in this criminal matter regardless of whether the UCMJ holds concurrent jurisdiction.

5

rights to which he was entitled. *Id.* (citation omitted).

When estoppel is available, the court then considers the traditional elements of estoppel, which are "(1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury." *Id.*, citing *Watkins v. U.S. Army*, 875 F.2d 699, 709 (9th Cir. 1989).

Defendant Michael Castro argues that the Government committed an affirmative misconduct, because (1) the military affirmatively informed Defendant Michael Castro that he would be exclusively subject to the Installation Commander's adjudication for any wrongdoing concerning the OHA; and (2) the military partially completed his form without his input and confirmed that his application and living arrangements qualified him for the OHA. *See* Mot., ECF No. 24, at 5-7.

As the Ninth Circuit noted, there is no single test for detecting the presence of affirmative misconduct. *Watkins*, 875 F.2d at 707. It is determined on a case-by-case basis by examining the case's particular facts and circumstances. *Id.* Affirmative misconduct requires an affirmative misrepresentation or affirmative concealment of a material fact by the Government. *Id.* (citation omitted).

In cases where the court did not find affirmative misconduct, there was no pervasive pattern of false promises. For example, in *Lavin v. Marsh*, the plaintiff argued that the Army should be estopped from denying his entitlement to pension benefits because, *inter alia*, he was induced in reenlisting when the Army recruiters emphasized pension benefits. 644 F.2d 1378, 1382 (9th Cir. 1981). The court found that there was no evidence to suggest that the recruiters deliberately and knowingly lied to the plaintiff about his eligibility for pension benefits. *Id.* It held that while the Army's conduct may have been negligent, there was no pervasive pattern of

6

false promises that would amount to an affirmative misconduct. *Id* at. 1383. "A mere failure to inform or assist does not justify application of equitable estoppel." *Id.* at 1384 (citation omitted). *See also Socop-Gonzalez v. I.N.S.*, 208 F.3d 838, 843 (9th Cir. 2000) (no evidence of a "deliberate lie" or "pattern of false promises" sufficient to constitute affirmative misconduct).

In a case where the court found affirmative misconduct, there was ongoing active misrepresentation. *See Watkins*, 875 F.2d at 708. For fourteen (14) years, the U.S. Army acted in violation of its own regulations[6] when it repeatedly represented that the soldier was eligible[7] to reenlist and then it reenlisted him each and every time. *Id.* at 707-08. The court found that the Army's actions were not merely misinformation. *Id.* at 708.

Like *Lavin* but unlike *Watkins*, in this instant case, there was no affirmative misconduct. Defendant Michael Castro argues that the military acted in affirmative misconduct because military personnel partially completed his OHA form (such as his address and other information) without his input and confirmed that his application and living arrangements qualified him for OHA.[8] *See* ECF No. 24, at 6-7. In *Watkins*, the court found affirmative misconduct because the military was aware of the soldier's homosexuality but despite their knowledge of such, the military repeatedly ignored its regulations in barring reenlistment of homosexuals and repeatedly approved the soldier's reenlistment for *fourteen (14) years*. *See* 875 F.2d at 707. The present case is distinguishable from *Watkins*, because assuming that the military completed Defendant Michael Castro's form and that they informed him that his application met all the OHA

---

[6] The U.S. Army's policy was that homosexuality constituted a nonwaivable disqualification for reenlistment. *Watkins*, 875 F.2d at 707.

[7] On the one occasion when the record was unclear, the soldier sought clarification and his classification was immediately changed from "unknown" to "eligible for reentry on active duty." *Id.*

[8] The court notes that at the hearing, the Government represented to the court that the Department of Defense relies on the information provided by an applicant in processing and approving an OHA application. This also includes the review of supporting documents provided by the applicant, such as the lease agreement and business license of the applicant's landlord.

7

requirements, there is no evidence in this case that shows false promises or misrepresentations that occurred repeatedly year after year for many years, to the point that there was a pervasive pattern of false promises or ongoing active misrepresentation.

At the hearing, Defendant Michael Castro through his counsel argues that there was a pattern of false promises or ongoing active misrepresentations because whenever there was a new or revised lease agreement, Defendant Michael Castro was required to fill out the same OHA forms and on these forms, it warns Defendant Michael Castro that he is subject to adjudication by the Installation Commander, punishment by court-martial, and disciplinary actions. Defendant Michael Castro through his counsel believes that he was warned of such on three (3) occasions since there were three (3) lease agreements from discovery.

The court finds Defendant Michael Castro's arguments unpersuasive. The military never informed Defendant Michael Castro that he would be *exclusively* subject to the Installation Commander's adjudication for criminal matters involving the OHA. The OHA Declaration Form is clear in that the Installation Commander will adjudicate *questionable* OHA claims, not by changing "entitlement to an allowance" but rather, by adjudicating "the parameters under which the allowance is paid," such as disapproving lease agreements "for properties whose owners are subject to restrictive sanctions imposed pursuant to discrimination complaints," or "because the rental amount is excessive and not reflective of available housing."[9] *See* Def.'s Ex. A. Nowhere

---

[9] The pertinent paragraph on the OHA Declaration Form provides in its entirety the following:

> I understand that the Installation Commander adjudicates cases involving questionable OHA claims. While the Installation Commander may not change my entitlement to an allowance, the Installation Commander adjudicates the parameters under which the allowance is paid.
> (1) The Installation Commander shall disapprove lease agreements for properties whose owners currently are subject to restrictive sanctions imposed pursuant to discrimination complaints.
> (2) Per Joint Federal Travel Regulations, Volume 1, the Region Commander as the senior officer of the Uniformed Services in Guam may disapprove a lease

on the OHA Declaration Form does it provide exclusive authorization nor any authorization for that matter for the Installation Commander to adjudicate criminal matters pertaining to fraudulent claims.

Similarly, the DD Form 2367 (Privacy Act Statement) does not provide for exclusive military jurisdiction to adjudicate suspected fraudulent claims. While the DD Form 2367 contains a warning that "[m]aking a false statement or claim against the U.S. Government is punishable by courts-martial," it does not state that this is the *only* method by which the Government could prosecute criminal violations. *See* Def.'s Ex. A. In fact, the DD Form 2367 gives notice that "information provided herein may be provided to law enforcement personnel investigating those suspected of fraudulently obtaining allowances" and that "[i]nformation may also be disclosed under certain circumstances to other Federal agencies . . . State and local government, and U.S. and State courts." *Id.*

Also, the latter part of the OHA Declaration Form states that "disciplinary action will be taken when housing allowances are used for other that [*sic*] the purpose intended." *See* Def.'s Ex. A, ECF No. 30. Even if disciplinary action will be taken, such statement does not preclude the Government from bringing criminal charges against military personnel in the federal district court for violations of federal statutes.

Based on the discussion *supra*, there is no affirmative misconduct and therefore, it is unnecessary to go into the other factors as affirmative misconduct is the first part of the test in

---

because the rental amount is excessive and not reflective of available housing. This authority may not be delegated. In exercising this authority, the Region Commander may obtain appraisals and use other available market information. However, an appraisal indicating a rental value within 15% of the asking price will not be sufficient for a determination that the rent is excessive without other market indications such as duration of vacancy, non-OHA rental offers, leases for comparable properties, general market trends, etc.

9

Case 1:12-cr-00018   Document 37   Filed 02/28/13   Page 9 of 12

applying estoppel against the Government.

### c. The *Feres* Doctrine Analysis Does Not Apply in this Case.

Defendant Michael Castro attempts to apply the *Feres* doctrine analysis in this criminal case. Specifically, Defendant Michael Castro argues that he should not be subject to federal district court jurisdiction, because (1) he occupies a "special" status that is not similar to that of any civilian (e.g., the housing allowance is only for military personnel); and (2) he and the scope of the housing allowance program is directly under the control of and is subject to military orders and discipline. *See* Reply, ECF No. 28. Therefore, Defendant Michael Castro argues, he should be subject to the UCMJ, not the federal district court. *Id.*

Defendant Michael Castro's reliance on the analysis applied in the *Feres* doctrine is misplaced. First, the *Feres* doctrine, also known as intramilitary doctrine, applies in civil matters and not in criminal matters. *Feres v. United States*, 340 U.S. 135 (1950). Second, the concept in *Feres* is that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the court of activity incident to service." *Id.* at 146. The presence of direct military control is sufficient to establish the activity as incident to military service. *Bon v. United States*, 802 F.2d 1092, 1096 (9th Cir. 1986). *See also Mariano v. United States*, 605 F.2d 721, 723 (4th Cir. 1979). The reasoning for barring such suits is that the court recognizes the special nature of military life and the disruption it will cause military life if a soldier is allowed to sue his superiors in courts. *Chappell v. Wallace*, 462 U.S. 296, 304 (1983).

The *Feres* doctrine has nothing to do with criminal matters and there is nothing in the application or analysis of *Feres* that would show that this district court lacks jurisdiction over Defendant Michael Castro. Defendant Michael Castro has not provided any legal authority to show that this court lacks jurisdiction simply because Defendant Michael Castro and the scope of the OHA program are under direct military control or are incident to military service, or simply

because Defendant Michael Castro occupies a special status as a military member and not a civilian.

   d. **The Rule of Lenity Does Not Apply.**

Lastly, Defendant Michael Castro argues that to the extent that the statutes and military procedures at issue in this case "fails to establish that the Government's position is unambiguously correct," the court should resolve the ambiguity in his favor. *See* Reply, ECF No. 28 at 4.

The rule of lenity requires the court to "resolve any ambiguity in the scope of a criminal statute in favor of the defendant." *United States v. Miranda-Lopez*, 532 F.3d 1034, 1040 (9th Cir. 2008). "[T]he rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute such that the Court must simply guess as to what Congress intended." *Barber v. Thomas*, 130 S.Ct. 2499, 2508 (2010) (citations and internal quotes omitted). *See also United States v. Nader*, 542 F.3d 713, 721 (9th Cir. 2008) (The language of the statute must be grievously ambiguous.). The rule is "rooted in fundamental principles of due process which mandate that no individual be forced to speculate, at peril of indictment, whether his conduct is prohibited." *Id.* The rule does not generally apply to civil statute but when the implementation of a civil statute intertwines with the application of a criminal statute, it is sufficient to invoke the rule of lenity. *United States v. Turner*, 689 F.3d 1117, 1125-26 (9th Cir. 2012).

In this case, Defendant Michael Castro attempts to argue that the criminal statute intertwines with military procedures and thus, the ambiguity should be resolved in his favor. Defendant Michael Castro does not point to any specific ambiguity in the criminal statute language or in the military procedures. As discussed *supra*, it is clear that the OHA Declaration Form provides for the Installation Commander to adjudicate questionable OHA claims and that

11

disciplinary action will be taken if OHA payments are misused. It is also clear from the DD Form 2367 that making false statements or claims against the Government is punishable by courts-martial. Additionally, it is clear that nowhere on these forms does it provide exclusive military adjudication of criminal activities or violations of federal statutes. As discussed earlier, this court clearly has jurisdiction pursuant to 18 U.S.C. § 3231.

## III. CONCLUSION:

Based on the discussion above, Defendant Michael Castro's Motion to Dismiss is hereby **DENIED**. Further, because the arguments presented by Defendant Michael Castro are inapplicable to Defendant Clare Castro as she is not subject to the UCMJ, her Joinder of Motion to Dismiss is also **DENIED.**

The following trial schedule is hereby issued:

- The following must be filed or lodged with the court by ………. March 26, 2013
  - **An original and one copy of the witness list.** Witness lists must include legal names, aliases, nicknames, village/city of residence, and place of employment.
  - **Proposed *Voir Dire* Questions, Proposed Jury Instructions with source noted, and Proposed Verdict Forms.**
  - **An original and three copies of the exhibit list.** Government's exhibits shall be numbered and Defendants' exhibits shall be lettered.
  - **Three complete sets of marked and tabbed exhibits in three-ring binders, with each binder containing a filed copy of the exhibit list.** The exhibits shall include those items which may be introduced for identification into evidence but not necessarily proffered for admission, i.e., police/investigative reports or witness statements. The parties shall meet and confer sufficiently in advance of trial and formulate a set of joint exhibits. Those exhibits upon which agreement cannot be reached shall be submitted separately by each respective party.

- **Final Pretrial Conference** shall be held ……………April 2, 2013 at 10:30 a.m.

- **Jury Selection and Trial** shall be held on………........April 9, 2013 at 9:30 a.m.

**SO ORDERED.**

**/s/ Frances M. Tydingco-Gatewood**
**Chief Judge**
**Dated: Feb 28, 2013**